UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYRONE WILLIAMS,<br><br>Defendant. | 09-20066 |

### DEFENDANT'S COMMENTARY ON REVOCATION

Defendant Tyrone Williams, through his attorney Assistant Federal Public Defender Johanes Maliza, pursuant to 18 U.S.C. § 3583(e), hereby submits this commentary on revocation and the relevant sentencing factors.

I. **Procedural Posture**

On August 23, 2018, a Petition to Revoke was filed in the district court. Dkt. No. 80. The petition alleged that Mr. Williams violated the terms of his supervised release by committing a violation of Illinois state law. Specifically, on August 21, 2018, he drove under the influence of alcohol, while his license was revoked. For 15 months, Mr. Williams awaited resolution of his case on bond, maintaining steady employment and raising his two children.

On October 18, 2019, this Court held a final revocation hearing for Mr. Williams. At the hearing, Mr. Williams admitted the allegations of the petition, and the Parties presented sentencing recommendations. The United States recommended eight days of incarceration (on weekends). Mr. Williams recommended time served. The Court

1

deferred resolution of the matter until after Mr. Williams' state case resolved.  On the way home from that hearing, Mr. Williams was stopped for speeding, and charged in Sangamon County with having a suspended license for unpaid fines.

Mr. Williams' original case – the 2018 Macon County DUI without a license – resolved on November 13, 2019.  Mr. Williams was sentenced to 10 days in the Macon County Correctional Center, with credit for four days previously served in custody.  He went into custody on November 20, 2019, and got out on November 27, 2019, the day before Thanksgiving.

The day after he got out of jail, while preparing Thanksgiving dinner with his family in his house, Mr. Williams drank alcohol in violation of the terms of his bond.  The probation officer called him, learned that he had been drinking, and made Mr. Williams take a breathalyzer.  A supplemental petition to revoke Mr. Williams was filed, and a warrant for Mr. Williams' arrest issued.

Mr. Williams did not know about the arrest warrant, and came to his previously-scheduled December 5, 2019 sentencing hearing on his own.  There, he was presented with the warrant for his arrest, and a supplemental petition to revoke his supervised release.  He has been detained since then.

## II. Waiver of Revocation Hearing

Given the guilty finding in Macon County Case No. 2018-CF-1210, Mr. Williams concedes that the Court can enter a finding that he violated a condition of supervised release because the state conviction itself is "adequate proof of the violation of state law." *United States v. Huusko*, 275 F.3d 600, 602 (7th Cir. 2001).

As a result, Mr. Williams waives his right to a revocation hearing, and requests sentencing immediately following the revocation.

### III. Policy Statement Guidelines Range

The applicable guidelines range is 21-27 months.

### IV. Recommended Adjudication

Mr. Williams respectfully recommends that he be sentenced to: (1) time served; (2) no supervised release; (3) no fine; (4) no restitution.

### V. Sentencing Hearing

Mr. Williams will not present any sworn testimony or evidence at the sentencing hearing. He asks, however, that the Court consider his October 17, 2019 sentencing commentary, and the character letters attached to it, as well as the letter of support already previously filed by Angel Wilson, of Pleasant Counseling. *See* Dkt. Nos. 92, 95.

Mr. Williams also asks that the Court consider the re-entry plan composed by the Federal Defender's Mitigation Specialist, Kathleen Leifer, MSW.

### VI. Argument

An unfathomable decision to drive in October, followed by an even worse decision to drink at home while preparing for Thanksgiving, threatens to undo years of steady recovery and work for Mr. Williams. As noted in the October 17, 2019 commentary, Mr. Williams is a *success* story for this Court, and a testament to the virtues of dedicated probation officers who shepherd offenders through supervised release. A sentence of time served in this case, which would result in just over 30 days

3

of incarceration, would meet the sentencing goals of 18 U.S.C. § 3583(c): deterrence, protection of the public, and rehabilitation.

Unlike a criminal sentence, punishment has no place in a revocation sentence. *See* 18 U.S.C. § 3583(c) (omitting 18 U.S.C. § 3553(a)(2)(A)'s goal of providing "just punishment" with a sentence).  Its absence is explicit, and fundamental.  A supervised release violation should sanction the breach of trust, *United States v. Phillips*, 791 F.3d 698, 701 (7th Cir. 2015), but punishment is simply not a consideration.

Mr. Williams' failures in October (driving without a license) and in November (drinking at home) are disappointing.  He had done so well for so long.  But an extended prison sentence, causing Mr. Williams' life to fall apart, is longer than necessary to meet the goals of § 3583(c).

### A. Mr. Williams' Life before Supervised Release

The distance Mr. Williams has traveled from his pre-supervised release life to today, is remarkable.  His original PSR in this case shows that, from 1989 through 2006, Mr. Williams had a score of arrests, and near constant contact with the criminal justice system. PSR, Dkt. No. 35 ¶¶ 28-59.  He received felony convictions for drugs, a weapon, and battery.  He had many driving offenses.  Despite being a low-level, basically nonviolent offender, he has spent the vast majority of his adult life in jail or on probation.

He found himself at a crossroads when he got out in 2014: he could shape up, or continue on his self-destructive path.  Continuing his path had a predictable ending. He, personally, would go back to jail.  His young children would grow up without him,

4

in financial insecurity.  His family would drift apart, and he could be a drain on society going forward.

Or, he could choose the other route.  He could get a job.  He could make a home for his children, be the role model he wanted to be, and become a contributing member of society.  In short, he could be an adult.

He emphatically chose the latter.  From January 2014 through his detention on this case in December 2019, Mr. Williams was consistently employed.  His jobs included a 19-month stint at Caterpillar, and four months at Archer Daniels Midland.  By the time of his December 2019 arrest, Mr. Williams was earning $1,900 a month. He fixed his credit, saved, and bought a home (with a mortgage), where his children live with him.

It is a remarkable journey for Mr. Williams.  He was, for whatever reason, a drain on society.  He went to jail frequently, and could not figure out legal employment.  While in jail, his children were being raised without him.  And he had no prospects.

But during his time on supervised release, from 2014 through 2019, he figured out how to contribute, hold a good job, and be a steady figure for his children.

**B. Mr. Williams' Addiction to Alcohol**

For all of the self-improvements that Mr. Williams has made, he is an alcoholic.  This topic was addressed in the October commentary, but it bears re-mentioning today.  He has been drinking since he was 15 years old.  PSR ¶ 70.  It has caused him significant trouble, notably being a part of his interactions with law enforcement.  *Id*.  However earnestly he has striven to improve decisions, he has let himself down.

Thankfully, the supplemental revocation does not concern a new DUI. The driving allegation was sober, but unwise. The alcohol allegation was drinking, but at home. It is a marginal improvement over the 2018 violation that initiated this revocation, but an improvement nonetheless.

His failure, however, does not mean he is incorrigible. For one, his counselor, Diane Pleasant, sees potential in him. As Ms. Pleasant wrote of their session, he will never escape some of the pressures that have gotten him in trouble before: "exposure to high risk situations . . . poor decision-making, [and] peer pressure . . . ." Dkt. No. 92. But she found him to be "engaging" and a "positive influence on other group members." *Id.*

There is also hope for Mr. Williams' recovery from alcoholism because we know that treatment works, over time. Alcohol abuse is a disease, as recognized by the DSM-5. *See* https://www.niaaa.nih.gov/alcohol-health/overview-alcohol-consumption/alcohol-use-disorders, last accessed on December 31, 2019. According to the government's National Institute on Alcohol Abuse and Alcoholism, "[h]owever severe the problem may seem, most people with AUD can benefit from treatment." *Id.*

His success on supervised release – holding a job, in particular – shows that he can succeed if he perseveres. Prison will not help his recovery from alcoholism. Ms. Pleasant says he needs to continue counseling to be "successful at maintaining abstinence." Dkt. No. 92. He cannot get that in prison, and even if he could, prison is not an appropriate means of promoting rehabilitation. *See Tapia v. United States*, 564 U.S. 319, 327 (2011); 18 U.S.C. § 3582(a). If he goes to prison, though, his whole life

6

crumble while he is in: the loss of his home, his family life, and his dreams of a steady future. He will emerge facing the same pressures he always faced, but now with diminished prospects and the daunting challenge of re-starting from scratch.

### C. The Sentencing Goals of 18 U.S.C. §§ 3553(a)(2)(b)-(d)

As noted above, § 3583(c) instructs the Court to consider the sentencing aims of § 3553(a)(2)(b)-(d). A sentence of time served helps the court meet those goals.

Mr. Williams understands that sanction is warranted, given his poor decisions. And while specific deterrence matters, it has already been accomplished through the supplemental petition and the arrest in court. Mr. Williams cried when arrested. In an instant, he saw his dreams evaporating because he drove in October, then was drinking at home in November. It reminded him that he can lose everything because of a bad decision, even if he is not hurting someone through a crime like drug dealing. Now he languishes in Livingston County jail, unsure of his future, knowing that his bills are piling up and his children lack their father.

The public needs no protection from him for future crimes. Macon County has already vindicated its interests in the 2018 DUI. His October speeding ticket and the revoked license will be dealt with by Sangamon County. And the supplemental petition's drinking at home allegation is not a crime. Whatever protection is needed will come through Mr. Williams' improved decision making. That will come through the rehabilitation afforded by counseling.

As mentioned above, prison is not an appropriate means of rehabilitation. Mr. Williams was seeking rehabilitation before his arrest, through counseling and

enrollment in a 12-step program.  He is committed to making better choices, and addressing these issues, so that there is no future problem.

While he has had lapses, custody will provide no value regarding deterrence, protection of the public, or rehabilitation.

### VII.  Conclusion

Wherefore, Mr. Williams respectfully requests that he be sentenced to: (1) time served; (2) no more supervised release; (3) no fine; (4) no restitution.

Respectfully submitted,

December 31, 2019              TYRONE WILLIAMS, Defendant,

THOMAS PATTON, Federal Public Defender

s/ Johanes Maliza
Johanes C. Maliza
Office of the Federal Public Defender
600 E. Adams St., Third Floor
Springfield, IL 62701
Telephone:   217-492-5070
Facsimile:    217-492-5077
E-mail:       johanes_maliza@fd.org

CERTIFICATE OF SERVICE

I certify that on December 31, 2019, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Johanes Maliza